*Hitchcock, J.
The controversy in this case is as to the validity of the sale for taxes, in pursuance of which the lessor of the plaintiff claims title. If the proceedings under that sale were in accordance with the statute, the lessor has the legal title, unless there are other circumstances in the case which will defeat him.
Many objections are urged to these proceedings, or rather to the sufficiency of the evidence introduced to show what these proceedings were. Most of these objections, however, are based upon the supposition that there is a want of evidence preliminary to that which is now before the court, but this evidence was all introduced upon the circuit, and it is within the recollection of the members of the court that, after the most careful examination, no defect could be discovered in the proceedings up to the time the land was returned delinquent for the non-payment of the tax of 1836. The evidence now before us commences with a copy of the return of this delinquent list for 1836, by the proper officer, to the auditor of state, which copy is certified by the chief clerk in the auditor’s office. From this time it appears that the land was regularly returned delinquent, the fact of delinquency being established by the oath of the treasurer of the county. Then follows what is denominated a copy of the record of proceedings relative to delinquent lands and town lots within the county of Fayette, on which the taxes are due and unpaid for the years 1836 and 1837.
This shows that the tracts of land contained in a list, on which list is the land now in controversy, were regularly entered, by the auditor of the county, for taxation, on the duplicate of 1836. *526 That on August 13, 1836, this duplicate was handed over to tha treasurer of the county for collection ; that the treasurer being •unable to collect the tax on the land contained in this list, returned the same as delinquent, on the first Monday of January, 1837; that the county auditor made out and transmitted a list thereof to the auditor of Estate; that the auditor of state not certifying that the taxes were paid thereon, the county auditor entered said land on the duplicate of 1837, charging the land with the tax of 1836, with the interest and penalty, in addition to the simple tax of 1837. On August 14,. 1837, this duplicate was handed over for collection to the treasurer of the county, and the-taxes still remaining unpaid, the county auditor made out a separate list of said lands, describing the same as they were described on the duplicate, and caused the same to be published for four successive weeks, between the 1st day of October and the 1st day of December, 1837, in a paper (naming it) printed and in general circulation in the county of Fayette, to which said list was attached a regular certificate, as required by the statute.
Then follows a copy of the advertisement; next a certificate of publication; then a statement that the treasurer attended at the court-house, in said county, on the last Monday in December, and offered the lands for sale, and that the land in controversy was actually sold to Wade Loofborow..
Then there is a certificate that this is a true copy of the records of his office.
This is objected to as being matter of history, not of facts, in the nature of a record. The auditor certifies that it is a true copy of the records in his office. It is matter, then, there recorded; and I suppose the record of a transaction is a history of a transaction. A record, for instance, of a judicial proceeding, is a history of that proceeding — nothing more nor less; and this record is a history of the proceedings which transpired previous to, and were consummated in the sale of this land.
We see no defection in it; counsel have failed in pointing Out any which actually exist.
Now, if there had been no other evidence in the case than is now before the court, it seems to us that the plaintiff would havo made out a prima facie case. We have evidence of the delinquency of the land for the tax of 1836 — evidence that it was again entered *527, 528 upon the duplicate in 1837, and evidence *that it was actually sold. This, in connection with the auditor’s deed, makes out a prima fade case for the plaintiff, and if there was anything wrong in the previous steps, it was incumbent on the defendant to have shown it. It would not, perhaps, be going too far to say that the prosecution of the auditor’s deed alone was sufficient to put the defendants on their defense. This land was sold under the act of March 14,1831, Chase’s Stat. 1837, which, after pointing out the manner in which lands shall be sold, and that the county auditor shall make deeds, provides, in section 39, “that the deed so made by the auditor shall vest in the grantee, his or her heirs and assigns, a good and valid title, both in law and equity, and shall be received in all courts as prima fade evidence of a good and valid title in such grantee, his heirs and assigns.” It will be seen that the phraseology of this statute is somewhat different from that of the act of February 1, 1825, 23 Ohio L. 89, under which the land in controversy, in the case of Carlisle v. Longworth, 5 Ohio, 368, was sold. It is not necessary, however, to express any opinion upon this point in the present case, as all the requisite preliminary proof was before the court at the time the case was reversed, and being before the court, it is immaterial as to which party introduced it. •
Another question is raised in the case which must be disposed of. The land in controversy was entered for taxation as survey No. 1,122, and entered also in the name of Richard Douglas, and it would seem to have stood in the name of Douglas, from the tax sales, in 1829. Previous to that time, the same land, by the same number of survey, had been entered upon the duplicate in the name of Bland and fm. Dangerfield. Being delinquent for nonpayment of the taxes of 1828 and 1829, it was sold to Douglas, and transferred to his name upon the duplicate, and has so remained to the present time, or rather, did so remain until the sale in 1837. In whose name it was taxed previous to 1828, we do not know, there being no evidence upon that point.
On March 8, 1833, warrant No. 209, the warrant *under which entry No. 1,122 had been made, and which entry had been surveyed in 1797, was withdrawn from that entry and survey, and the same was executed. On the same day, the same warrant was relocated by entry No. 13,377, and this latter entry was surveyed on the 12th day of the same month; and this latter survey was car *529 ried into grant on the 1st day of April next following. But whero was this warrant relocated? On precisely the same land upon which it was located before. I think it covers the same, and no more. Now, for what purpose all this maneuvering? The land ■ was fully appropriated by the previous survey, and no subsequent locator would interfere with it. But ft had been sold for taxes, and there can be no earthly doubt that the object of this relocation was to overreach the tax sale, to defraud the tax purchaser. Such finesse will not avail. This court have already decided that, after the survey of an entry has been recorded, it is not in the power of the owner to withdraw it, so as to destroy the tax lien of the state, or to avoid the regular sale for taxes. Hempbill v. Holt’s Heirs, 3 Ohio.
But it is said the land was not entered upon the duplicate by the correct number of entry. It was originally entered, and correctly entered, as No. 1,122, and it does not appear that any effort has been made by the proprietors of the land to have the number changed. It has, therefore, been continued upon the duplicate by that number. If the proprietors of this survey, after having received their patent, had honestly entered the land by its now number of survey, with the proper officer, for taxation, and had punctually paid the tax, all this difficulty might have been avoided; but this was not done; on the contrary, they seem to have rested upon the supposition that the change'of number would not only relieve them from previous, but from subsequent taxes, until, perchance, the proper officer should ascertain, by some means, that the change had been made.
It is necessary, in order to the validity of a tax sale, that the land should be entered upon the duplicate by a pertinent *description, and it should be entered in the name of the rightful owner, if known. If not known, however, the land is still taxed, being entered to an unknown owner. The tax attaches upon the land rather than upon the person — not upon the number of entry or survey, but upon the land included in such entry or survey. In this case, the land was pertinently described, and it was properly entered in the name of Douglas, it having been transferred to him in consequence of a previous sale.
'Upon full examination, we have discovered nothing to defeat the plaintiff’s title.
This case has been long in court, and continued from time to *530 time, not on account of any difficulty in the case, but in the hope the same would be settled between the parties; and in consequence of the repeated declarations of the plaintiff, made in open court, that he wanted nothing but that the money and interest, which he had advanced for the taxes, should be refunded. We had hoped that this proposition, so fair in itself, would have been acceded to by the defendants; but as it has not been, the case must now be disposed of. Judgment is entered for plaintiff.
Wood, C. J., being indisposed, did not sit in this case.